## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ANDRE P. SUH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 09-cv-1131 |
| | ) |
| EDDIE JONES, JOSEPH MATHY, | ) |
| MARCUS HARDY, MALCOLM | ) |
| DAVIDSON, JAMES CUNNINGHAM, | ) |
| ROY MOORE, CHRIS FORBES, and | ) |
| KEVIN DELONG, | ) |
| | ) |
| Defendants. | ) |

## O P I N I O N and O R D E R

Before the Court is the Motion to Dismiss filed by Defendants [Doc. 24]. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The following facts are taken from the Complaint. Plaintiff is an inmate at the Pontiac Correctional Center in Pontiac, Illinois. While in prison, Plaintiff had a job that involved collecting dumpsters. Plaintiff alleges that the procedure used to collect and transport the dumpsters to a recycling center was unreasonably dangerous. Specifically, Plaintiff states that in order to do his job and otherwise comply with orders from correctional officers, he was forced to ride on a makeshift platform at the rear of a defective tractor. He also was required to attach the large metal dumpsters, which had makeshift hooks and hitches on them and which were also defective, to the rear of the tractor. On April 15, 2007, during the course of the

dumpster collection procedure, four of the dumpsters came loose and hit Plaintiff in the left leg, crushing it between the tractor and the dumpster. Both bones in Plaintiff's left leg fractured and required at least two surgeries. Plaintiff still suffers from intermittent pain and has reduced use and mobility in that leg.

The operator of the tractor at the time of the accident was Correctional Officer Chris Forbes who was assigned to the task by Kevin Delong, the Shift Commander. The plaintiff alleges that Forbes was assigned the task by Delong even though he had no prior experience on the tractor and there were other Correctional Officers with experience. The platform was constructed by Maintenance Worker/Craftsman Roy Moore at the behest of Correctional Officer Reynold Ripple (who is not a Defendant in this suit). Throughout the "factual background" section of the Complaint, Plaintiff alleges that various prison officials observed the dumpster collection procedure (Comp. ¶ 27) and that it was well known that the hooks attached to the dumpster would break or slip causing the dumpsters to separate and "roll out of control" (Comp. ¶ 32). Plaintiff further alleges that there was no training provided to Correctional Officers operating the tractor and that there were no safety classes or instructions given to inmate workers (Comp. ¶ 34). Plaintiff states that Moore told him that he had warned Eddie Jones, the Warden of PCC, Joseph Mathy, an Assistant Warden, Marcus Hardy, an Assistant Warden, and James Cunningham, the Business Administrator, that the dumpsters need replacing and that they could cause serious injury (Comp. ¶ 52). This warning went unheeded even though another inmate, Mark Ferns, sustained injuries from being thrown off the back of the tractor (Comp. ¶ 52).

Plaintiff further alleges that Jones, Mathy, and Hardy had observed Plaintiff on the back of the tractor (Comp. ¶¶ 60, 68, 76). Plaintiff finally alleges that each of Defendants, including Malcolm Davidson, the Duty Warden, were aware of the risk posed by the tractor, dumpsters, and the dumpster collection procedure but failed to minimize the risk.

Each of Defendants are being sued in their official and individual capacities. Plaintiff claims in Counts I through VIII that each of Defendants were deliberately indifferent to a substantial risk of serious harm in violation of the Eighth Amendment. In Count IX, Plaintiff alleges that the operator of the tractor, Defendant Forbes, was negligent. Plaintiff seeks compensatory and punitive damages from each Defendant (in their individual capacities), injunctive relief that would prevent the prison from requiring inmates to ride on the back of the tractors without adequate safety features, and a declaratory judgment that requiring inmates to stand on the makeshift platform creates a substantial risk of serious harm that violates the Eighth Amendment.

Defendants have filed a Motion to Dismiss seeking dismissal of the monetary damages claims against Defendants in their official capacity, dismissal of Defendants Jones, Mathy, Hardy, Davidson, Cunningham, and Delong because of a lack of personal involvement, and dismissal of Counts VI, VII, IX and Defendants Forbes and Moore based on a contention that the proper forum for these claims is the Illinois' Court of Claims.

## DISCUSSION

The Court assumes Defendants are seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must view a complaint in a light most favorable to the plaintiff. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. Richards v. Kiernan, 461 F.3d 880, 882 (7th Cir. 2006). A plaintiff is not required to plead extensive facts, legal theories, or to anticipate defenses. Massey v. Merrill Lynch and Co., Inc., 464 F.3d 642, 650 (7th Cir. 2006). However, a plaintiff must "provide the grounds of his entitlement to relief" that are "more than labels and conclusion [] [or] a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007) (citations and editing marks omitted). In particular, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Defendants' first argument is that Plaintiff may not seek damages from Defendants to the extent that they are being sued in their official capacity. Defendants are correct in noting that damages are not available in official capacity suits filed in federal court because such suits are essentially against the State of Illinois which is blanketed by Eleventh Amendment immunity. Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Complaint, however, explicitly states that damages are being sought against Defendants in their *individual* capacity. Moreover, Plaintiffs are, of course, entitled to seek prospective injunctive relief

against Defendants, in their official capacity. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex parte Young, 209 U.S. 123 (1908)).

Defendants' next argument is that Jones, Mathy, Hardy, Davidson, Cunningham and Delong cannot be liable under § 1983 because they lack the requisite personal involvement. In order to assert a viable § 1983 claim, Plaintiff must allege some personal involvement in the alleged constitutional deprivation. See Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003). Officials are personally responsible if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Johnson v. Snyder, 444 F.3d 579, 583-584 (7th Cir. 2006) (quotation marks and citation omitted); Brokaw v. Mercer County, 235 F.3d 1000, 1012 (7th Cir. 2000) ("An official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights"); Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) ("An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."). As indicated above, Plaintiff alleges that these Defendants knew about the unsafe and dangerous condition of the tractor and the dumpster retrieval procedure, viewed Plaintiff performing the procedure, had the power to change the unsafe procedure, and failed to use their power to make the dumpster retrieval procedure safe.

With respect to Eddie Jones, the Warden, Plaintiff alleges that he was "personally aware" of the risk of harm to Plaintiff, that he observed Plaintiff perform the risky task, that he was warned prior to the accident of the risk of serious harm, and that he nonetheless failed to act. (Comp. ¶¶ 60-63). The same is claimed against Assistant Warden Mathy (Comp. ¶¶ 68-71) and Assistant Warden Hardy. (Comp. ¶¶ 76-79). With respect to Davidson, the Duty Warden, Plaintiff only alleges that he also was personally aware of the risk of harm to Plaintiff and that he failed to reduce the risk. (Comp. ¶¶ 84-87). Plaintiff alleges that Cunningham, the Business Administrator who allegedly had responsibility to ensure that the tractors and dumpsters were safe, was also personally aware of the danger posed by the tractors and dumpsters, failed to heed a prior warning about the danger posed by the procedure, and failed to take corrective steps. (Comp. ¶¶ 90-95). Finally, Plaintiff alleges that Delong, the Shift Commander, was aware of the risk, that he assigned an inexperienced correctional officer (Forbes) to tractor duty despite being aware of the risk, and failed to take reasonable steps to minimize the risk. (Comp. ¶¶ 118-121).

Plaintiff has sufficiently alleged § 1983 claims against these Defendants. While Plaintiff has not provided great detail, he does allege that each of these Defendants was personally aware of the risk of harm engendered by the dumpster collection procedure. He further alleges that the Warden and the Assistant Wardens were warned of the danger but that they condoned the dangerous condition by failing to act. With respect to the remaining Defendants, Plaintiff

6

alleges that they were aware of the dangerous condition and that they also condoned the dangerous procedure or facilitated its continuation.

That being said, it bears indicating that success on Plaintiff's claims requires much more than a mere showing that any of Defendants was negligent in developing, carrying out, facilitating, or condoning the dumpster retrieval procedure. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests and safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (7th Cir. 1986); See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official cannot be held liable unless "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 522 U.S. 825, 837-838 (1994); Lee v. Young, 533 F.3d 505, 509-510 (7th Cir. 2008) ("With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense."). The salient fact at issue here is the defective nature of the hooks and hitches which were attached to the dumpsters and which placed Plaintiff at a substantial risk of serious harm. Whether any of Defendants merely observed Plaintiff perform the dumpster retrieval task, or even observed him on the makeshift platform, is not, standing alone, tantamount to an awareness of a substantial risk of serious harm: they would also have to have knowledge of the

7

defective coupling devices that created the substantial risk of serious harm faced by Plaintiff.. It will be insufficient for Plaintiff to merely show that the entire dumpster retrieval procedure was unwise or ill-advised: he must be able to show that Defendants were aware of the substantial risk of serious harm to Plaintiff inherent in the job he was doing or the specific facts from which that inference could be drawn and he must show that Defendants in fact drew that inference.

Defendants finally offer a brief and undeveloped argument that the claims in Count VI, VII, and IX[1] should be dismissed because they belong in the Illinois Court of Claims and that Defendants Forbes and Moore are entitled to sovereign immunity. Defendants seem to be conflating an argument that this Court lacks original subject matter jurisdiction over the negligence claim with an argument that the § 1983 claims are one-and-the-same as the negligence claim. To the extent that Defendants argue that this Court lacks jurisdiction over the § 1983 claims, the argument is clearly without merit. The § 1983 claims and the negligence claim are unique and are not equal.

With respect to the negligence claim (which is asserted only against Forbes), Defendants essentially argue that any duty owed by Forbes to Plaintiff arose out of his state employ and can only be an official capacity claim. As such any negligence claim is a claim against the state of Illinois, which is immune from suit in federal court by virtue of the Eleventh Amendment. See Turpin v. Koropchak, 567 F.3d 880, (7th Cir. 2009). Moreover, by operation of state law, any such negligence claim can only be brought in the Illinois Court of Claims. 705 Ill. Comp. Stat. § 505/8.

---

[1] Counts VI and VII are the Eighth Amendment claims against Moore and Forbes, respectively, and Count IX is the negligence claim against Forbes.

8

Plaintiff counters by arguing that the negligence claim is independent of Forbes' employment and therefore properly before this Court on supplemental jurisdiction. Plaintiff asserts that Forbes owed a general duty of care to Plaintiff, as a passenger, in the operation of a motor vehicle.

Defendants unfortunately do not flesh out this argument; as such, an extensive discussion of this claim is difficult. Defendants are accurate in arguing that "[w]here an alleged act of misconduct arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State Employment, sovereign immunity will bar maintenance of the action in any court other than the Illinois Court of Claims." Turpin v. Koropchak, 567 F.3d 880, 882 (7th Cir. 2009) (internal quotation marks and citations omitted; emphasis in original). To determine whether Plaintiff's action is essentially against the State, the Court must analyze the "issues involved and the relief sought." Currie v. Lao, 592 N.E.2d 977, 980 (Ill. 1992). If the claim against the individual "could operate to control the actions of the State or subject it to liability" it is considered an action against the State and will be barred. Id. Conversely, when "the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court." Id.

In the area of negligent operation of automobiles on public roads, Illinois considers the duty imposed to be independent of a person's state employment, even if the employee was performing official duties at the time the duty arose. Id. at 981 ("As noted, sovereign immunity attaches only when a State employee is charged

9

with breaching a duty imposed on him solely by virtue of his State employment. Therefore, it will not aid an employee who is charged with breaching only those duties imposed on him as an ordinary driver of a motor vehicle."). As such, negligence claims arising out of automobile accidents on public highways may be brought in Illinois circuit court (and thus in federal court provided that there is diversity jurisdiction).  See Id.; Bartholomew v. Crockett, 475 N.E.2d 1035, 1039-1040 (Ill. Ct. App. 1985).

However, this case is not a run-of-the-mill car accident case that formed the foundation of the decisions in Currie and Bartholomew.  Would the same analysis apply to the facts of this case?  The complaint here alleges that Forbes was driving a tractor on prison grounds at the time of the accident and that he was doing so in furtherance of his duties as a correctional officer and as assigned by his superior officer.  The Complaint further alleges that Forbes was negligent in the operation of the tractor by driving at an unreasonable high rate of speed.  Given these allegations, would Forbes be under the same duties as a driver on Main Street?  The Court thinks not.  While not argued by Defendant, the Court finds that the manner in which the tractor was driven to be unique to his employment.  See e.g. Campbell v. White, 566 N.E.2d 47 (Ill. Ct. app. 1991) (finding that sovereign immunity applied to a negligence claim involving a high-speed police chase of a suspect). Forbes was not driving the tractor on a city street but rather on prison grounds as part of his duties as a correctional officer.  It is highly unlikely that such activity is governed by the same statutory authority or common law that governs other drivers on public highways.  Not only is it highly unlikely that Forbes would be held to the

same standard as a regular driver, this claim can only function to compel the prison, and therefore the State of Illinois, to change its rules with respect to driving on prison grounds. Therefore, because this claim would effectively control the actions of the State of Illinois, it is barred by the Eleventh Amendment. This Court may not exercise jurisdiction over this claim and it is DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants [Doc. 24] is GRANTED IN PART and DENIED IN PART. Count IX is DISMISSED WITHOUT PREJUDICE. This matter is REFERRED to Magistrate Judge Gorman for a Rule 16 scheduling conference and all other pretrial matters.

Entered this <u>27th</u> day of January, 2010

s/ Joe B. McDade<br>
JOE BILLY MCDADE<br>
United States District Judge